**No. 17-1172, -1173**

**UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT**

**INDUSTRIAL MODELS, INC.,**

*Plaintiff-Appellant*,

**v.**

**SNF, INC., BRANDFX HOLDINGS, L.L.C., and
BRANDFX, L.L.C., D/B/A BRANDFX,**

*Defendants-Cross-Appellants*.

**ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS,
NO. 4:15-CV-689 (HON. JOHN MCBRYDE)**

**RESPONSE TO PLAINTIFF-APPELLANT'S MOTION FOR SANCTIONS
PURSUANT TO RULE 38 AND INHERENT POWERS OF THE COURT**

Hugh G. Connor, II
Michael D. Anderson
Brian K. Garrett
KELLY HART & HALLMAN LLP
201 Main Street, Suite 2500
Fort Worth, Texas 76102
Tel: (817) 332-2500
Fax: (817) 878-9280
hugh.connor@kellyhart.com

May 22, 2017                    Attorneys for Defendants-Cross-Appellants

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ............................................................................... iii

PARTY ABBREVIATIONS ...............................................................................iv

INTRODUCTION ...............................................................................................1

ARGUMENTS AND AUTHORITIES ................................................................2

I.     Standards....................................................................................................2

II.    The BFX Parties' cross-appeal is not frivolous..............................................3

     A.    The BFX Parties have not disregarded or distorted
           the record on alleged "threats" ...............................................................3

     B.    The BFX Parties have not disregarded the trial court's
           finding that they "acted collectively"....................................................5

     C.    The BFX Parties have not "distorted the significance"
           of SNF's and BFX Holdings' lack of IP ...............................................6

     D.    The BFX Parties have not mischaracterized the transaction
           between SNF, BFX Holdings, and BFX .................................................8

     E.    The BFX Parties have not distorted Industrial Models'
           lack of a fixed and definite design ......................................................10

     F.    The BFX Parties have not distorted any supposed "history
           of evasions and contradictions"...........................................................12

     G.    The BFX Parties have not asserted any "frivolous" argument
           pertaining to BFX's trade dress...........................................................12

     H.    The BFX Parties' challenge of the fee-shifting award
           is not frivolous....................................................................................13

# TABLE OF CONTENTS (cont.)

                                                                    **Page**

III.   The BFX Parties cannot and did not act in "bad faith" or "vexatiously"
       by asking this Court to affirm the District Court's 12(b)(6) dismissal .........14

       A.    Industrial Models cites no relevant authority to support
             the relief requested ..............................................................15

       B.    The BFX Parties' response briefing was not "vexatious"
             or in "bad faith"—it instead tracked the District Court's
             ruling with record and case authorities ...............................................16

CONCLUSION ....................................................................................18

CERTIFICATE OF INTEREST ..............................................................19

CERTIFICATE OF SERVICE ................................................................20

CERTIFICATE OF COMPLIANCE ......................................................21

# TABLE OF AUTHORITIES

**Cases**                                                     **Page**

*Arris Grp., Inc. v. British Telecomms. PLC*,
639 F.3d 1368 (Fed. Cir. 2011) ............................................................... 6, 9

*Arrowhead Indus. Water, Inc. v. Ecolochem, Inc.*,
846 F.2d 731 (Fed. Cir. 1988) ................................................................. 6, 7

*Connell v. Sears, Roebuck & Co.*,
722 F.2d 1542 (Fed. Cir. 1983) ................................................................... 2

*Hall v. Cole*,
412 U.S. 1 (1973) .................................................................................. 15, 16

*King Pharms., Inc. v. Eon Labs, Inc.*,
616 F.3d 1267 (Fed. Cir. 2010) ................................................................... 7

*MedImmune, Inc. v. Genentech, Inc.*,
549 U.S. 118 (2007) ................................................................................. 6, 7

*Morrow v. Microsoft Corp.*,
499 F.3d 1332 (Fed. Cir. 2007) ................................................................. 10

*Sparks v. Eastman Kodak Co.*,
230 F.3d 1344 (Fed. Cir. 2000) ................................................................ 2, 3

*State Indus., Inc. v. Mor-Flo Indus., Inc.*,
948 F.3d 1573 (Fed. Cir. 1991) ................................................................... 2

*Walker v. Health Int'l Corp.*,
845 F.3d 1148 (Fed. Cir. 2017) ............................................................. 2, 15

**Rules**

Fed. Cir. Prac. Note for Fed. R. App. P. 38 ......................................... 3, 12

Fed. R. App. P. 38 ....................................................................................... 2

## PARTY ABBREVIATIONS

**Parties**

| | |
|---|---|
| Industrial Models | Plaintiff-Appellant, Industrial Models, Inc. |
| BFX Parties | Defendants-Cross-Appellants, SNF, Inc., BrandFX, L.L.C. and BrandFX Holdings, L.L.C., d/b/a/ BrandFX |
| SNF | Defendant-Cross-Appellant, SNF, Inc. |
| BFX | Defendant-Cross-Appellant, BrandFX, L.L.C. |
| BFX Holdings | Defendant-Cross-Appellant, BrandFX Holdings, L.L.C., d/b/a BrandFX |

# INTRODUCTION

Industrial Models' Motion for Sanctions ("Motion") is meritless.  In the Motion, Industrial Models asks the Court to assess an unspecified amount of sanctions against the BFX Parties for a supposedly "frivolous" or "grossly improper" appeal.  But in doing so, Industrial Models fails to present a clear argument as to why the BFX Parties' appellate positions are frivolous, grossly improper, or in any way sanctionable.  Instead, Industrial Models makes conclusory accusations that the law and facts do not support the BFX Parties' position—mostly preferring to cite its own briefing in lieu of particular aspects of the BFX Parties' briefing that are supposedly "frivolous" or "grossly improper." The few instances where Industrial Models actually cites specific portions of the BFX Parties' briefing that it contends are "frivolous" reflect, in truth, Industrial Models' mischaracterization of the law or facts.

Unlike Industrial Models, the BFX Parties' appellate positions are firmly grounded in both the law and facts.  Throughout their briefing, the BFX Parties cited numerous Supreme Court, Federal Circuit, and Fifth Circuit case law that is directly on point and supports their positions.  Similarly, the BFX Parties' briefing contains detailed record citations that directly support the factual matters in those briefs.  Industrial Models' accusation that the BFX Parties have "mischaracterized" or "distorted" the law or facts is baseless.  The mere fact that Industrial Models

disagrees with controlling law, the facts, or the BFX Parties' position provides no ground for sanctions against the BFX Parties.

The Motion should be viewed for what it is, a tactical maneuver to deflect attention from the (lack of) merit of Industrial Models' own appeal.  For the reasons set forth herein, the BFX Parties respectfully request that Industrial Models' Motion be denied.

## ARGUMENTS AND AUTHORITIES

### I.    Standards.

Under Rule 38, a court of appeals may assess sanctions for a frivolous appeal.  Fed. R. App. P. 38.  A court's authority to award sanctions under Rule 38 is "linked to the merits of, and the party's conduct during, the appeal." *Walker v. Health Int'l Corp.*, 845 F.3d 1148, 1154 (Fed. Cir. 2017).  An appeal may be frivolous in one of two ways.  First, an appeal is "frivolous as filed" when "an appellant has raised issues that are beyond the reasonable contemplation of fair-minded people, and 'no basis for reversal in law or fact can be or is even arguably shown.'"  *Sparks v. Eastman Kodak Co.*, 230 F.3d 1344, 1345 (Fed. Cir. 2000) (citing *State Indus., Inc. v. Mor-Flo Indus., Inc.*, 948 F.3d 1573, 1578 (Fed. Cir. 1991) (quoting *Connell v. Sears, Roebuck & Co.*, 722 F.2d 1542, 1554 (Fed. Cir. 1983)).  Second, an appeal is "frivolous as argued" when "an appellant has not dealt fairly with the court, has significantly misrepresented the law or facts, or has

abused the judicial process by repeatedly litigating the same issue in the same court." *Sparks*, 230 F.3d at 1345-46. This Court has recognized that "a frivolous appeal must be more than one that has little merit." *Id*. at 1345.

## II.   The BFX Parties' cross-appeal is not frivolous.

Industrial Models asserts that the BFX Parties' cross-appeal is frivolous "as filed" and "as argued" because the BFX Parties purportedly "disregarded" or "distorted" the facts and law. Industrial Models' argument has no merit. The BFX Parties' cross-appeal is supported by controlling law, the facts, and cogent argument.

### A.   The BFX Parties have not disregarded or distorted the record on alleged "threats."

As an initial matter, Industrial Models fails to present a clear argument that the BFX Parties have disregarded or distorted the record of their alleged "threats" of litigation. Therefore, this portion of Industrial Models' motion should be summarily denied pursuant to Practice Note 38. *See* Fed. Cir. Prac. Note for Fed. R. App. P. 38 ("The assertion that an appeal is frivolous must be accompanied by citation to the opposing brief or the record below with clear argument as to why those citations establish that the appeal is frivolous."). Industrial Models neither cites the BFX Parties' briefs nor does it compare those citations to contradictory citations from either the record or relevant precedent.

Nevertheless, the BFX Parties have not disregarded or distorted any portion of the record. Industrial Models used the bulk of its Response to present a tortured list of twenty-one supposedly independent "threats" of litigation. [Plaintiff-Appellant's Resp. & Reply Br. (ECF No. 42) at 8-27]. In Reply, the BFX Parties demonstrated that those twenty-one alleged threats boil down to three categories: (1) acts related to a state-court case that was filed by SNF alone and dismissed long before Industrial Models brought this suit, (2) the BFX Parties' silence in response to a threat of litigation from Industrial Models, and (3) acts taken by the BFX Parties after Industrial Models filed this lawsuit. [Defendants-Cross-Appellants' Reply Br. (ECF No. 45) at 2-8]. Industrial Models appears to be claiming generally that the BFX Parties' categorization misstates the record; however, it does not even try to provide a single, concrete example.

The BFX Parties then presented arguments—supported by Supreme Court, Federal Circuit, and Fifth Circuit precedent—as to why none of those three categories conferred standing to bring this suit. Specifically: (a) despite sending the cease-and-desist correspondence and bringing the Texas Lawsuit in 2013, SNF owned no rights to the intellectual property at the time Industrial Models filed this lawsuit in 2015;[1] (b) BFX and BFX Holdings were not parties to the Texas Lawsuit

---

[1]     [Defendants-Cross-Appellants' Reply Br. (ECF No. 45) at 12-14].

and did not even exist until after judgment had been entered in that case;[2] (c) the BFX Parties' refusal to offer a covenant-not-to-sue or to respond to Industrial Models' threat of litigation is insufficient to confer standing;[3] and (d) acts taken after the filing of this lawsuit are irrelevant to a standing analysis.[4]   Industrial Models offers no specific argument that the BFX Parties' arguments are incorrect, much less so frivolous as to warrant sanctions.

**B.    The BFX Parties have not disregarded the trial court's finding that they "acted collectively."**

Industrial Models next argues—again without any citation to the BFX Parties' briefs—that the BFX Parties "ignore[d] the district court's finding of fact that [the BFX Parties] 'acted collectively, without distinction among them' against Industrial Models."  [Plaintiff-Appellant's Mot. for Sanctions (ECF No. 52) at 5]. This is false.   One of the BFX Parties' central arguments stands as a direct challenge to this finding.

Specifically, the BFX Parties argued that BFX and BFX Holdings could not have possibly acted in concert with SNF on "threats" that took place before their existence, including SNF's cease-and-desist correspondence and the filing of the Texas Lawsuit.   [Defendants-Cross-Appellants' Reply Br. (ECF No. 45) at 18 ("Industrial Models highlights the District Court's finding that the BFX Parties

---

[2]      [*Id*. at 15-16].
[3]      [*Id*. at 16-17].
[4]      [*Id*. at 17].

'acted collectively' and without distinction among them.'  But BFX and BFX Holdings cannot be held accountable for something done by a third party, particularly when done before their own existence.") (citing *Asia Vital Components Co. v. Asetek Danmark A/S*, 837 F.3d 1249, 1253 (Fed. Cir. 2016) ("*MedImmune* did not change the bedrock rule that a case or controversy must be based on a *real* and *immediate* injury or threat of future injury that is *caused by the defendants* ....'") (internal quotations removed))].  And once the Texas Lawsuit is put aside, the only "threats" alleged by Industrial Models are the BFX Parties' silence in response to a letter and their participation in this lawsuit, neither of which can confer standing as a matter of law.  [*Id*. at 16-17].

### C.  The BFX Parties have not "distorted the significance" of SNF's and BFX Holdings' lack of IP.

Industrial Models also argues—again without any citation to the BFX Parties' briefs—that sanctions are warranted in response to the BFX Parties' argument that declaratory claims cannot be maintained against parties with no rights in the intellectual property.  [Plaintiff-Appellant's Mot. for Sanctions (ECF No. 52) at 6].  The only case it cites in support, *Arrowhead Industrial Water, Inc. v. Ecolochem, Inc.*, 846 F.2d 731 (Fed. Cir. 1988) was overturned by the Supreme Court in *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118 (2007) as confirmed by this Court in *Arris Group, Inc. v. British Telecommunications PLC*, 639 F.3d 1368, n.5 (Fed. Cir. 2011).  Industrial Models does not argue that it was overturned

on other grounds, because it was not. *MedImmune*, 549 U.S. at 127 ("*Aetna* and the cases following it do not draw the brightest of lines between those declaratory-judgment actions that satisfy the case-or-controversy requirement and those that do not. Our decisions have required that the dispute be 'definite and concrete, touching the legal relations of parties having adverse legal interests'; ….''). Industrial Models did not even provide this Court with a parenthetical—either in their motion for sanctions or their response to the cross-appeal—indicating that the case had been overturned.

Moreover, even if *Arrowhead Industrial* was still good law, it has absolutely nothing to do with filing a declaratory judgment claim against a party with no rights in the intellectual property. Instead, *Arrowhead Industrial* stands—or rather, stood—for the relatively straightforward point that a patent owner need not have accused someone of express infringement to satisfy the pre-*MedImmune* "reasonable apprehension" test. *Arrowhead Indus.*, 846 F.2d at 737-38.

In contrast, the BFX Parties cite *King Pharmaceuticals, Inc. v. Eon Labs, Inc.*, for its holding that declaratory judgment claims brought against parties with no rights in the intellectual property must be dismissed, even against a prior owner that previously threatened or sued the alleged infringer. [Defendants-Cross-Appellants' Reply Br. (ECF No. 45) at 13-14 (citing *King Pharms., Inc. v. Eon Labs, Inc.*, 616 F.3d 1267, 1282 (Fed. Cir. 2010))]. Further, the BFX Parties

explained that the ultimate holding in *King Pharmaceuticals* fits into a larger context of holdings from both this Court and the Fifth Circuit that parties without substantial rights in intellectual property have no standing to sue for infringement. [*Id.* (citing *Morrow v. Microsoft Corp.*, 499 F.3d 1332, 1340 (Fed. Cir. 2007) (patent); *ICEE Distribs., Inc. v. J&J Snack Foods Corp.*, 325 F.3d 586, 598-99 (5th Cir. 2003) (trademark); *In re Isbell Records, Inc.*, 586 F.3d 334, 338 (5th Cir. 2009) (copyright))].  And further, there is no "adverse legal interest" and thus no declaratory judgment standing if the declaratory defendant does not itself have standing to sue for infringement.  [*Id.* at 14 (citing *Arris Grp.*, 639 F.3d at 1374 ("An 'adverse legal interest' requires a dispute as to a legal right—for example, an underlying legal cause of action that the declaratory defendant could have brought or threatened to bring."); *MedImmune*, 549 U.S. at 126-27)]

### D. The BFX Parties have not mischaracterized the transaction between SNF, BFX Holdings, and BFX.

Industrial Models also contends that the BFX Parties should be sanctioned for their "further distortions" of the agreement that transferred the relevant intellectual property from SNF to BFX.  [Plaintiff-Appellant's Mot. for Sanctions (ECF No. 52) at 6-10].  Specifically, it argues that BFX Holdings is an appropriate declaratory defendant because it owned the intellectual property briefly before transferring it to BFX.  [*Id.* at 7].  This argument is both factually incorrect and legally irrelevant.  It is factually incorrect because the Intellectual Property

Assignment Agreement ("IPAA") explicitly assigned the intellectual property directly to BFX. Appx747 ("<u>Assignment</u>. For good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Seller does hereby sell, assign and transfer to [BFX] (at the direction of [BFX Holdings]) all its worldwide right, title and interest, including all common law rights in, to and under all of the Intellectual Property Assets, ...."). It is legally irrelevant because regardless of whether BFX Holdings owned the intellectual property before assigning it to BFX, it did not own any rights in the intellectual property *at the time this suit was filed*, which is the only time that matters for purposes of initial standing. *Arris Grp.*, 639 F.3d at 1373 ("The burden is on the party claiming declaratory judgment jurisdiction to establish an Article III case or controversy existed *at the time the claim for declaratory relief was filed*.") (emphasis added).

Industrial Models makes several additional arguments that both BFX Holdings and SNF are appropriate declaratory defendants because of the nature of the transaction between the BFX Parties. First, Industrial Models notes that both SNF and BFX Holdings have either direct or indirect ownership interests in BFX. [Plaintiff-Appellant's Mot. for Sanctions (ECF No. 52) at 7]. Next, Industrial Models notes that the IPAA appoints BFX as SNF's attorney for purposes of being able to "do all acts and things in relation to the Intellectual Property Assets conveyed hereby which [BFX] shall deem desirable, ...." [*Id*. at 8-9]; Appx748.

Finally, Industrial Models argues that SNF transferred the trade names "SNF, Inc." and "BrandFX Body Company." [*Id*. at 9].

None of these arguments demonstrate that sanctions are warranted. In fact, they are not even relevant to the underlying dispute because they do not establish that either SNF or BFX Holdings had any rights, much less any "substantial rights," in the intellectual property at the time this suit was filed. *See Morrow v. Microsoft Corp.*, 499 F.3d 1332, 1340 (Fed. Cir. 2007). Indeed, in granting BFX the power of attorney under the IPAA, SNF explicitly agreed that "the foregoing powers are coupled with an interest and are and shall be irrevocable by [SNF] or by its dissolution or in any manner or for any reason whatsoever." Appx748. In other words, SNF transferred all rights in the intellectual property to BFX.

### E.    The BFX Parties have not distorted Industrial Models' lack of a fixed and definite design.

Industrial Models incorrectly asserts that the BFX Parties' "entire argument against 'fixed and definite' product design is based solely on [the BFX Parties'] vexatious misreading of a July 22, 2016 declaration (Appx880-82) made by the owner of Industrial Models." [Plaintiff-Appellant's Mot. for Sanctions (ECF No. 52) at 10-11]. In fact, the BFX Parties' argument is based on much more, including: (1) Industrial Models' failure to produce any prototype, brochure, manual, or finished product in response to discovery requests, and (2) Industrial Models' repeated reliance on the marketing materials of a third-party's products to

show what its own products might—if they ever get around to designing them—look "like."  [Defendants-Cross-Appellants' Reply Br. (ECF No. 45) at 18-22]; [Plaintiff-Appellant's Mot. for Sanctions (ECF No. 52) at 10 ("The record is absolutely clear that Industrial Models' product design at issue is … FUBs made with the Subject Molds, which 'necessarily result in FUBs products *like* Badger Truck's ….") (emphasis added)].

The admission of Industrial Models' President was just one piece of a large pattern of evidence that Industrial Models received an improper advisory opinion covering products that are not sufficiently fixed to judge potential infringement. As detailed in the BFX Parties' briefs, this argument is supported by precedent from several Circuits, including both this Court and the Fifth Circuit.  [Defendants-Cross-Appellants' Reply Br. (ECF No. 45) at 18-22 (citing *Vantage Trailers, Inc. v. Beall Corp*., 567 F.3d 745, 749-50 (5th Cir. 2009); *Sierra Applied Sciences, Inc. v. Advanced Energy Indus., Inc*., 363 F.3d 1361, 1379 (Fed. Cir. 2004); *Benitech Austl., Ltd. v. Nucleonics, Inc.*, 495 F.3d 1340, 1346-50 (Fed. Cir. 2007); *Int'l Harvester Co. v. Deere & Co.*, 623 F.2d 1207, 1216 (7th Cir. 1980))].

Finally, Industrial Models argues that because their President's admission came twelve months after this case was initiated, it goes to mootness, not standing. [Plaintiff-Appellant's Mot. for Sanctions (ECF No. 52) at 11].  This misses the

point entirely. If Industrial Models had not settled on a design twelve months into this litigation, they surely had not done so at the time the suit was filed.

## F.    The BFX Parties have not distorted any supposed "history of evasions and contradictions."

Industrial Models states in conclusory fashion that the record "shows" that the BFX Parties' copyright infringement threats have changed and that it is an "uncontested fact" that the BFX Parties' trade dress arguments have "changed radically and bizarrely." [Plaintiff-Appellant's Mot. for Sanctions (ECF No. 52) at 12-13]. Because Industrial Models fails to demonstrate the alleged flip-flops with citations to the record, it is impossible to know exactly what it means, and this portion of the motion for sanctions should be denied pursuant to Practice Note 38. *See* Fed. Cir. Prac. Note for Fed. R. App. P. 38.

## G.    The BFX Parties have not asserted any "frivolous" argument pertaining to BFX's trade dress.

Industrial Models has repeatedly mischaracterized the cross-appeal of the District Court's finding regarding BFX's trade dress. [Plaintiff-Appellant's Mot. for Sanctions (ECF No. 52) at 13-16]; [Plaintiff-Appellant's Resp. & Reply Br. (ECF No. 42) at 43-50]. To avoid any doubt, the BFX Parties will state their position once more, with citations to their earlier briefs.

In granting Industrial Models' motion for summary judgment, the District Court held that BFX had "fail[ed] to identify the claimed trade dress" and "failed

to show that it has acquired secondary meaning." [Defendants-Cross-Appellants' Reply Br. (ECF No. 45) at 23]. On appeal, the BFX Parties challenge the District Court's finding that they raised no genuine issue of material fact on the issue that precluded summary judgment. [*Id*.].

In support of that appeal, the BFX Parties noted that the District Court had made a legal error by focusing on individual features of BFX's products instead of considering the "overall appearance and visual impression that the combination and arrangement of those elements create." [*Id*. at 23-24. (citing *Clicks Billiards, Inc. v. Sixshooters, Inc.*, 251 F.3d 1252, 1259-67 (9th Cir. 2001); *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 765 n.1 (1992))]. Further, the BFX Parties provided numerous record citations that demonstrated a genuine issue of material fact, including evidence demonstrating that BFX's trade dress had acquired secondary meaning and is non-functional. [Br. of Defendants-Cross-Appellants (ECF No. 37) at 60-66].

### H.    The BFX Parties' challenge of the fee-shifting award is not frivolous.

The BFX Parties' arguments regarding the fee-shifting award are simple. First, Industrial Models still has not cited any comparable case—even with the benefit of its motion for sanctions—in which a declaratory defendant who brought no counterclaims defended itself in such an unreasonable manner as to justify attorneys' fees. Instead, Industrial Models tries to confuse this issue—as it did in

its Response—with entirely inapplicable cases.   Specifically, Industrial Models cites: (1) a case awarding fees against a declaratory defendant who asserted a counterclaim and proceeded to litigate that counterclaim in an unreasonable manner, and (2) a Civil Rights case awarding fees by statute (where no exceptional case finding was required).  [Plaintiff-Appellant's Mot. for Sanctions (ECF No. 52) at 16 (citing *Highmark Inc. v. Allcare Health Mgmt. Sys., Inc.*, 572 U.S. ____, 134 S. Ct. 1744 (2014) (awarding fees against a declaratory defendant that asserted a counterclaim for patent infringement); *Lefemine v. Wideman*, 568 U.S. ___, 133 S. Ct. 9 (2012) (awarding fees under the Civil Rights Attorney's Fees Awards Act)].

Second, the BFX Parties argue that the fee should be overturned because it was not segregated between the various claims and parties.   This is not a "frivolous[] and vexatious[] attack[]" on the District Court's "imposition of joint-and-several liability for the fee-shifting award."   [Plaintiff-Appellant's Mot. for Sanctions (ECF No. 52) at 16].   It has nothing to do with joint-and-several liability. The point is, as more fully explained in the BFX Parties' briefs, that unsegregated fee awards are infirm because this Court may find that some, but not all, of the declaratory claims should have been dismissed by the District Court.

## III.  The BFX Parties cannot and did not act in "bad faith" or "vexatiously" by asking this Court to affirm the District Court's 12(b)(6) dismissal.

Industrial Models' sanctions arguments with respect to the BFX Parties' response brief are similarly meritless.   Absurdly, Industrial Models wants this

Court to force the BFX Parties to fund Industrial Models' Reply brief, alleging that the BFX Parties' response brief was "vexatious," "frivolous," and filed in "bad faith." There is nothing vexatious or frivolous about defending the District Court's dismissal of Industrial Models' damage claims based on the appellate record and controlling authorities. Even worse, Industrial Models cites no supporting authority for its extraordinary sanctions motion.

### A. Industrial Models cites no relevant authority to support the relief requested.

Industrial Models cites no case, rule or statute permitting sanctions for an appellee's response brief filed in support of the District Court's judgment.

Industrial Models cites Federal Rule of Appellate Procedure 38, but that rule, on its face, only allows an award of costs or damages for a frivolously filed appeal—not the filing of a response brief. Industrial Models filed this appeal. The BFX Parties responded—urging affirmance of the District Court's judgment on all damage claims, and citing the relevant record and authorities in support thereof. Rule 38 does not apply to the BFX Parties' response brief.

Contrary to Industrial Models' motion, neither *Walker* nor *Hall* support an award of fees under the aforementioned circumstances. [*See* Plaintiff-Appellant's Mot. for Sanctions (ECF No. 52) at 2]. *Walker v. Health Int'l Corp.* merely holds the Court has inherent powers to award fees when a party acts in bad faith. 845 F.3d 1148, 1153 (Fed. Cir. 2017) (quoting *Hall v. Cole*, 412 U.S. 1, 5 (1973)). The

*Hall* opinion, however, is more specific—holding that a "successful party" may seek fees from the "unsuccessful party" that acted in bad faith. 412 U.S. at 5-6. Neither case expressly permits fee shifting for responding to an appeal and seeking to affirm the District Court. Moreover, neither case applies here because Industrial Models was not the "successful party" on the issues it appealed. Regardless, as shown below, there is no support for Industrial Models' hollow accusations of bad faith and vexatious response briefing.

### B. The BFX Parties' response briefing was not "vexatious" or in "bad faith"—it instead tracked the District Court's ruling with record and case authorities.

First, Industrial Models contends the BFX Parties response briefing on *Noerr-Pennington* and the "sham litigation" issue was vexatious because it ignored the allegations in its Complaint and controlling law. [Plaintiff-Appellant's Mot. for Sanctions (ECF No. 52) at 17-19]. Not true. The BFX Parties cited to over 30 pages of conclusory allegations from Industrial Models' Complaint and grouped them into categories. [Br. of Defendants-Cross-Appellants (ECF No. 37) at 21 (citing Appx51-83)]. Moreover, the BFX Parties addressed each and every sham litigation exception argument raised by Industrial Models on appeal—with countless cites to the record, controlling authorities, and the Complaint. [*Id*. at 21-28].

16

Industrial Models also erroneously contends the BFX Parties disregarded controlling law in *FilmTec*, despite the fact that the BFX Parties' briefing cited and quoted *FilmTec* extensively.  [*Id*. at 24-27].  Industrial Models then amazingly contends the BFX Parties are vexatious for ignoring *Miner v. Punch*—a case Industrial Models did not even cite in its opening brief.  [Plaintiff-Appellant's Mot. for Sanctions (ECF No. 52) at 19].

Next, Industrial Models falsely asserts that the BFX Parties' responsive briefing is vexatious because it ignored the record and controlling law on the "multilateral conduct" issue.  Again, even a cursory review of the BFX Parties' briefing shows it addressed every appellate ground raised by Industrial Models, with cites to the record, controlling authorities and the Complaint.  [Br. of Defendants-Cross-Appellants (ECF No. 37) at 28-33 (citing Complaint at Appx53-55 and paragraphs 59-65, 73-76, 82-86, and 88)].

Lastly, Industrial Models contends the BFX Parties' responsive briefing was vexatious as to the leave to amend issue because the brief failed to support allegations that the District Court acted within its discretion in refusing to amend based on bad faith or undue delay.  [Plaintiff-Appellant's Mot. for Sanctions (ECF No. 52) at 20].  Again, Industrial Models' motion misstates the record.  The BFX Parties' briefing established that Industrial Models only sought leave to amend six weeks after the District Court's dismissal order.  [Br. of Defendants-Cross-

Appellants (ECF No. 37) at 39 (citing Appx1, Appx176)].  The brief also pointed out that Industrial Models sought leave to amend a second time almost a year later. [*Id*. (citing Appx277)].  Under those circumstances, case law precedent supports the District Court's finding of bad faith or undue delay.  [*Id*. at 38-39].

## CONCLUSION

For the reasons set forth above, this Court should deny Plaintiff-Appellant's Motion for Sanctions (ECF No. 52).

Respectfully submitted,

*/s/ Hugh Connor*
Hugh G. Connor, II
  *Counsel of Record*
Michael D. Anderson
Brian K. Garrett
KELLY HART & HALLMAN LLP
201 Main Street, Suite 2500
Fort Worth, Texas 76102
Tel: (817) 332-2500
Fax: (817) 878-9280
hugh.connor@kellyhart.com

May 22, 2017                    *Counsel for Defendants-Cross-Appellants*

## CERTIFICATE OF INTEREST

Counsel for Defendants-Cross-Appellants certifies the following:

1.    The full name of every party represented by us is:

SNF, Inc., BrandFX Holdings, L.L.C., and BrandFX, L.L.C., d/b/a BrandFX

2.    The name of the real party in interest represented by us is:

SNF, Inc., BrandFX Holdings, L.L.C., and BrandFX, L.L.C., d/b/a BrandFX.  The parties named in the caption are the real parties in interest.

3.    All parent corporations and any other publicly held companies that own 10 percent or more of the stock of the party represented by us are:

No parent corporation or publicly held companies own 10% or more of stock in SNF, Inc., BrandFX Holdings, L.L.C., or BrandFX, L.L.C., d/b/a BrandFX.

4.    The names of all law firms and the partners or associates that appeared for SNF, Inc., BrandFX Holdings, L.L.C., and BrandFX, L.L.C., d/b/a BrandFX in the trial court or are expected to appear in this court are:

KELLY HART & HALLMAN LLP:  Hugh G. Connor, II, Michael D. Anderson, and Brian K. Garrett.


*/s/ Hugh Connor*
Hugh G. Connor, II

Dated: May 22, 2017

## CERTIFICATE OF SERVICE

I hereby certify that on May 22, 2017, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Federal Circuit by using the CM/ECF system.  I certify that all participants in this case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

*/s/ Hugh Connor*  
Hugh G. Connor, II

## CERTIFICATE OF COMPLIANCE

1.  This response complies with the type-volume limitation of Federal Rule of Appellate Procedure 27 because it contains 4,044 words, excluding the parts of the response exempted by Federal Rule of Appellate Procedure 32(f).

2.  This response complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type and style requirements of Federal Rule of Appellate Procedure (a)(6) because this response has been prepared in a proportionally spaced typeface using "Microsoft Word 2010" in fourteen (14) point "Times New Roman" style font.

*/s/ Hugh Connor*
Hugh G. Connor, II